UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| KENNETH WADKINS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KRISTYN KLINGSHIRN, ) <br> ) <br> Defendant. ) <br> ) | Civil No. 5:23-cv-00175-GFVT-MAS <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

*** *** *** ***

In 2022, Kenneth Wadkins was arrested for murder. A grand jury refused to indict, and the charges against him were dropped. Mr. Wadkins asserts that Detective Klingshirn violated his Fourth Amendment right to be free from malicious prosecution. Now, Detective Klingshirn moves to dismiss the action on the grounds of preclusion and waiver. For the following reasons, Defendant's Motion for Summary Judgment **[R. 32]** is **GRANTED**.

**I**

On January 21, 2021, Wesley Brown was murdered.[1] [R. 1 at 2.] Nine months later, Defendant Klingshirn filed a Criminal Complaint against Mr. Wadkins in Fayette District Court. *Id.* That Complaint alleged five things: (1) that a witness identified Mr. Wadkins as Wesley Brown's murderer; (2) that the witness's details were supported by evidence at the scene; (3) that "Crime Stoppers" tips identified the murderer as someone named "Ghost"; (4) that Mr. Wadkins's street name is "Ghost"; and (5) "that location data from an electronic device placed [Mr. Wadkins] at the scene of the murder." *Id.* Based on the Complaint, an arrest warrant issued

---

[1] The facts recounted here are taken from Plaintiff's Complaint. [R. 1.] At the 12(b)(6) stage, the Court presumes their truth while making reasonable inferences in Plaintiff's favor.

for Mr. Wadkins. *Id.* Following his arrest, Plaintiff Wadkins spent approximately two months incarcerated in jail. *Id.* at 4. After a grand jury declined to indict, Mr. Wadkins was released and the charges against him were dropped. *Id.* Mr. Wadkins maintains that he is "innocent of the murder of Wesley Brown." *Id.* at 2. He contends that Detective Klingshirn flouted the Fourth Amendment when she sought to prosecute him maliciously without probable cause. *See* 42 U.S.C. § 1983.

Klingshirn's criminal complaint against Wadkins reads as follows:

The Affiant, Kristyn M Klingshirn, states that on 1/21/2021 at 19:00 in FAYETTE County, Kentucky, the above named defendant unlawfully: Committed the offense of Murder, KRS 507.020, On January 21, 2021 at 1900, the listed offender was at 580 Breckenridge when, with the intent to cause death to another person, caused the death of the victim, Wesley Brown when he shot him. During the course of the investigation the offender was identified by a cooperating witness who was present when the shooting occurred. The cooperating witness provided details of the incident which can be corroborated by evidence located at the scene. I also received multiple crime stoppers tips advising 'Ghost' shot Mr. Brown and identifying 'Ghost' as Kenneth Wadkins. A separate witness also identified Kenneth Wadkins as 'Ghost'. The tips further advise 580 Breckenridge is used for gambling and Mr. Brown was set up. Utilizing Police resources, location data from a electronic device also puts Kenneth Wadkins at the scene.

In particular, Plaintiff Wadkins states that Klingshirn made recklessly misleading and false statements in both the criminal complaint and preliminary hearing. Undergirding the criminal complaint is information transmitted to Klingshirn by the victim's sister, Lashonda Brown. Ms. Brown informed Klingshirn (and Klingshirn included in the complaint) that her brother "previously had an issue with" Wadkins, and that Wadkins's street name was "ghost." Omitted from the complaint, however, according to Wadkins, was material information from Ms. Brown that pointed to another suspect.

Brown informed Klingshirn that (1) she suspected a man named Burford Lyvers shot her brother; (2) prior to his death, her brother (while in the hospital and on a breathing tube) blinked

2

to indicate "yes" in response to her question whether Lyvers had shot him; (3) a man named Arsenio Jackson set her brother up to be killed; and (4) Lyvers was providing false tips to police. The omission of this information, Wadkins states, was particularly important given that Lyvers was working as a confidential informant for police and in the process provided Klingshirn with much of the information she used in the criminal complaint against Wadkins. Mr. Wadkins states that numerous additional portions of Klingshirn's criminal complaint and hearing testimony were either false or misleading. For instance, Klingshirn included in the complaint that multiple crime stoppers tips and independent witnesses identified Wadkins as "ghost," and stated that "ghost" shot Mr. Brown. Nonetheless, she omitted that Lyvers was the only person who identified Mr. Wadkins as the shooter by name. Klingshirn further allegedly neglected to include in her testimony that she had received a tip about another individual (not Mr. Wadkins) who went by "ghost" and had recently been released from prison, where he was confined for manslaughter. He provides a litany of other examples of allegedly false and misleading information provided by Klingshirn.

## II

Under Rule 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe."

*Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255).

### A

42 U.S.C. § 1983 provides a mechanism for a malicious prosecution plaintiff to seek relief from the responsible government actors. *See, e.g.*, *Caskey v. Fenton*, No. 22-3100, 2022 WL 16964963, at *2 (6th Cir. Nov. 16, 2022). To prevail, the § 1983 plaintiff must prove "(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected or caused to be subjected to this deprivation by a person acting under color of state law." *Gregory*, 220 F.3d at 441. "[S]ection [1983] is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Accordingly, a § 1983 inquiry necessarily begins by "isolat[ing] the precise constitutional violation" at issue. *Id.* at 140.

"The Sixth Circuit 'recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006)). The Fourth Amendment malicious prosecution plaintiff must show (1) "that a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute[;]" (2) that the prosecution was not based on probable cause; (3) that the plaintiff was

4

deprived of his liberty as a result of the prosecution; and (4) that the criminal proceeding was ultimately resolved in favor of the plaintiff. *Id.* at 308–09 (internal citations omitted).  "In *Sykes*, we recognized that a showing of 'malice' is not necessarily essential to a malicious prosecution claim under the Fourth Amendment." *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015). Still, "there must be some element of blameworthiness or culpability in the participation[.]" *Id.* Moreover, "a defendant's participation must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake, to satisfy the elements of a malicious prosecution claim under the Fourth Amendment." *Id.*

Defendant Klingshirn asserts that Mr. Wadkins cannot create a genuine dispute of material fact as to the first and second elements.  Further, even if he can, she contends she is protected by qualified immunity.

Even accepting Wadkins' allegations of false and misleading testimony, "his malicious prosecution claim still fails because probable cause existed to arrest him, notwithstanding the allegedly false testimony." *Snow v. Nelson*, 634 F. App'x 151, 158 (6th Cir. 2015).  "In order to distinguish appropriately this claim from one of false arrest, we must consider not only whether the Defendants had probable cause to arrest the Plaintiffs but also whether probable cause existed to initiate the criminal proceeding against the Plaintiffs." *Sykes v. Anderson*, 625 F.3d 294, 310–11 (6th Cir. 2010).  "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57, 138 S. Ct. 577, 586, 199 L. Ed. 2d 453 (2018) (internal citation omitted).  "To determine whether there was probable cause . . . this court must analyze the totality of the circumstances to see whether facts and circumstances were sufficient to lead a reasonable person to believe that [Wadkins] committed the particular offenses with which he was charged." *Snow*, 634 F. App'x at 158.  "An eyewitness identification will constitute sufficient probable cause

5

'unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness "was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation."'" *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (internal citation omitted). "This comports with the general notion that, since eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity." *Id.*

Even though Wadkins was not indicted, probable cause existed to arrest and initiate a proceeding against him. First, the victim's sister, Lashonda Brown, indicated Wadkins went by "Ghost." She noted a possible motive for the shooting when she explained that (1) Brown was shot in 2010, and (2) Brown believed Wadkins was the culprit. Other anonymous tips identified "Ghost" as Brown's killer. Lyvers, an eyewitness to the shooting, also identified Wadkins as "Ghost." *See Lester v. Roberts*, 986 F.3d 599, 609 (6th Cir. 2021) ("[A] statement from a witness known to the police is 'generally sufficient to establish probable cause without further corroboration because the legal consequences of lying to law enforcement officials tend to ensure reliability.'" (quoting *United States v. Hodge*, 714 F.3d 380, 385 (6th Cir. 2013))). Further, geofence data from Wadkins's devices placed him on Breckenridge Street when the shooting took place. Even accepting Wadkins's contention that he was essentially framed by eyewitness Lyvers, "[t]he deliberate falsity or reckless disregard" relevant to a constitutional claim is "only that of the affiant, not of any nongovernmental informant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

### III

Accordingly, and the Court otherwise sufficiently advised, it is hereby ordered as follows:

1. The Defendant's Motion for Summary Judgment **[R. 32]** is **GRANTED**;

2. This action is DISMISSED and STRICKEN from the Court's active docket; and

3. A Judgment will be entered contemporaneously herewith.

This the 29th day of September, 2025.

Gregory F. Van Tatenhove
United States District Judge